No. 22-11356-DD

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

ANNA JURAVIN, LEVIA JURAVIN (MINOR), YNES JURAVIN (MINOR)
Appellants,

vs.

DENNIS KENNEDY, JAMES RYAN, BRADLEY SAXTON, LAUREN
REYNOLDS,
Appellees.

Appeal from the United States District Court
for the Middle District of Florida
No. 5:21-cv-00514-GAP-PRL

---

**APPELLANTS' REPLY TO JOINT BRIEF OF APPELLEES**

---

Anna Juravin /Pro Se/
15118 Pendio Dr.,
Bella Collina, FL 34756
8135009055
anna@juravin.com

**22-11356-DD**
**Juravin, et al v. Kennedy, et al.**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1, files this Certificate of Interested Persons and Corporate. Disclosure Statement, and certifies that the following is a complete list of all trial judges, attorneys, person, associations of person, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. Bartolone, Aldo G., Bartolone Law, PLLC, former counsel for Don K. Juravin, Debtor.

2. Beatty, Scott A., Henderson, Franklin, Starnes & Holt, P.A., counsel for Appellee Trustee Dennis D. Kennedy.

3. Henderson, Franklin, Starnes & Holt, P.A., counsel for Appellee Trustee Dennis D. Kennedy.

4. Jennemann, Karen S., former presiding Judge (now retired), for the U.S. Bankruptcy Court for the Middle District of Florida.

5. Juravin, Anna, Appellant. Debtor's wife.

6. Juravin, Levia (minor), Appellant.

7. Juravin, Ynes (minor), Appellant.

8. Kennedy, Dennis D., Florida Chapter 7 Bankruptcy Trustee for the Estates of Don K. Juravin and company Must Cure Obesity, Co.

9. Lammens, Philip R., Magistrate Judge for the U.S. District Court Middle District of Florida.

10. Presnell, Gregory A., presiding Senior Judge, U.S. District Court for the Middle District of Florida.

11. Reynolds, Lauren M., Appellee, counsel for Trustee Kennedy, an attorney with Winderweedle, Haines, Ward &Woodman, P.A.

12. Ryan, James D., Appellee, special counsel to Trustee Kennedy, an attorney with Ryan Law Group, PLLC.

13. Ryan Law Group, PLLC.

14. Saxton, Bradley M., Appellee, lead counsel for Trustee Kennedy, an attorney with Winderweedle Haines, Ward &Woodman, P.A.,,

15. Winderweedle Haines, Ward &Woodman, P.A., co-counsel, and lead general counsel for Trustee Kennedy.

16. Vaughn, Lori V., presiding Judge, U.S. Bankruptcy Court for the Middle District of Florida.

# TABLE OF CONTENTS

I.    STATEMENT REGARDING ORAL ARGUMENT. ....................................1

II.   STATEMENT OF SUBJECT-MATTER JURISDICTION AND
      APPELLATE JURISDICTION..........................................................4

      A. The District Court's Jurisdiction....................................................4

III.  STATEMENT OF THE ISSUES. ......................................................5

IV.   STATEMENT OF THE CASE. ........................................................5

      A. The Order on Appeal. .................................................................5

      B. The Bankruptcy Cases. ..............................................................5

      C. The Break Order...........................................................................6

      D. The Motion to Remove Trustee……………………………………15

      E. The Complaint...............................................................................16

V.    SUMMARY OF THE ARGUMENT.................................................17

VI.   ARGUMENT...................................................................................18

      A. The District Court did not err in dismissing the Complaint for lack of
      subject-matter jurisdiction pursuant to the Barton doctrine.........................18

          i. This case falls squarely within the contours of the Barton doctrine...18

          ii. Barton applies because this lawsuit is "related to" the Debtors'
      Bankruptcy Cases under 28 U.S.C. § 157(a)...............................................19

      B. The District Court appropriately considered the limited exceptions to
      the Barton doctrine and did not err by concluding the ultra vires exception is
      inapplicable.......................................................................................20

      C. The District Court did not err in finding that the ultra vires exception
      to the Barton doctrine is inapplicable........................................................21

      D. Even if the Barton doctrine is somehow inapplicable, the Order should point.

be affirmed because the Appellees have judicial immunity for acts taken within the scope of their official capacity.......................................................21

E. This appeal is an impermissible collateral attack on the Break Order .........22

F. Even if the Barton doctrine and judicial immunity do not apply, the District Court did not err by dismissing the claims because they suffer from certain fatal deficiencies. ...................................................................22

   i. Counts II and III were properly dismissed with prejudice because they are barred by Florida's litigation privilege. ..........................................22

   ii. Count I was properly dismissed with prejudice because Appellants cannot allege a claim under 42 U.S.C. § 1983 or Bivens. ...........................22

   iii. Count I and Count II were properly dismissed with prejudice because the Trustee and Counsel are not law enforcement officials subject to the Fourth Amendment or the Florida Constitution......................22


VII. CERTIFICATE OF COMPLIANCE..................................................28

CERTIFICATE OF SERVICE...............................................................29


## TABLE OF CITATIONS


The Florida Professional Rules of Ethics……………………………..…………3

Fla. Stat. § 812.014 (1) (2001) *Stat. § 812.012 (3) (a) and (3) (d) 1 (2001).* Rule 4-8.4c, Rule 4-8.4d

## I.    STATEMENT REGARDING ORAL ARGUMENT

An oral argument is absolutely necessary to dispel the misstatements and misrepresentation of facts by Appellees.

The two cases are wholly separate and distinct. The removal action had nothing to do with the damage claim now under appeal for acts committed solely against No-Debtors!

The removal case 6:21-cv-1922-GAP addresses the Trustee and his counsels' lack of transparency and ethics, disinterest, dishonesty, and misconduct with respect to Non-Debtor property.

The Court may take notice that it was Mr. James Ryan and Mr. Brad Saxton who actively participated in the break order into the Non-Debtors' and Debtor's home. Their bad faith intention was aiming to cause harm to Non-Debtors. They were exposed to attorney-client privileged documents and they are in possession of them. Their participation evidenced a higher authority that they speak to, to wit, DCS, who was/is paying their fees both to be the Trustee's legal counsel and as well as fees their firm receives in, representing Bella Collina and DCS various entities to sue the Juravin family.

Ms. Reynolds and Mr. Saxton from law firm Winderweedle Haines, Ward & Woodman, P.A., which represented PSR Developers, the Juravin's lender, and adversary, in a lawsuit against the Juravin family, case: 35-2017-CA-001304, never

was disclosed to the bankruptcy court either by the Trustee or Mr. Saxton. And this is only one small example.

Mr. James Ryan and his law firm, Ryan Law Firm,  provide long-term representation for Bella Collina and DCS various entities which are the creditors in Mr. Juravin's bankruptcy case, and also adversaries in state court ongoing proceedings. The bottom line Mr. James Ryan has been involved with litigations against the Debtor and Juravin family since my family moved to the Bella Collina community in 2016. In fact, Ryan Law firm banned my family from the Club at Bella Collina.

In this case, the Trustee has enabled adversary creditors (James Ryan on behalf of Bella Collina and DCS various entities) to go into the Debtor's house, when they knew the Debtor could not be present till the middle of May, and it appears deliberately sought to cause destructive harm to Non-Debtors, which they have accomplished. If ever there was a conflict of interest, this should be noted. The unimaginable has become the reality. The Trustee in this instance uses the power invested in him, to retain the Debtor's fiercest enemies, and retains attorneys, who represent Bella Collina and DCS and who continue to be paid by DCS.

The appealed case is about damage claims for acts committed solely against Non-Debtors.

The Florida Professional Rules of Ethics for Attorneys appears likewise to be implicated in this instance Florida's theft statute provided:

*"A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit from the property; (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property." Fla. Stat. § 812.014 (1) (2001). To obtain or use the property of another, one must take or exercise control over the property or is engaged in "conduct previously known as conversion. Fla. Stat. § 812.012 (3) (a) and (3) (d) 1 (2001).*

Rule 4-8.4c of the Florida Rules of Ethics prescribes conduct involving dishonesty, fraud, deceit, or misrepresentation, and Rule 4-8.4d prescribes conduct prejudicial to the administration of justice. Both sections appear to be implicated by the action. The Trustee have a responsibility to carry out their duties as officers of the Honorable Court with the dignity and grace which the court so justly deserves. In this instance, they have gone far astray for personal greed and aggrandizement. The Trustee has allowed himself to get caught up in a power play whose strings are controlled by parties that apparently have money to burn to prove their point. But they have gone too far in their mission and duty. It is one thing to professionally

undertake a forensic audit but it is quite another thing to go on a witch hunt stirred by the devil's brew.

It is not a second bite of the apple.

Permissible appeals under the mandate of the US Constitution in the establishment of our courts.

## II.    STATEMENT   OF   SUBJECT-MATTER   JURISDICTION   AND APPELLATE JURISDICTION.

### A. The District Court's Jurisdiction.

Appellees say the District Court properly concluded that it lacks subject-matter jurisdiction over the Complaint pursuant to the Barton doctrine because the Appellants failed to obtain permission from the Bankruptcy Court before filing their Complaint.

Appellants' permission is not required because this is an action brought by Non-Debtors who acted ultra vires which is the exact reason the ultra vires exception to the Barton Rule was created.

## III.    STATEMENT OF THE ISSUES.

No approval was required as it was a clear exception to the Barton Rule of ultra vires activity by the Trustee wholly outside the scope of his authority or the Break Order.

## IV.    STATEMENT OF THE CASE.

### A. The Order on Appeal.

The retention argument as used throughout is bogus. Goods unlawfully converted require no demand for return!

Appellees say:

*"Appellants are not concerned with any wrongful retention of property, and the lawsuit is aimed at interfering with the Trustee's ability to administer the bankruptcy estate."*

This is a pathetic and bold lie by the Trustee. This case has nothing to do with the Debtor or the Debtor's estate. This is an often repeated mischaracterization of the facts at hand.

### B. The Bankruptcy Cases.

This FTC action is irrelevant and part of the gamesmanship the Trustee, Mr. Saxton, Mr. James Ryan, and Ms. Reynolds like to inflame the situation.

### C. The Break Order.

The Trustee obtained an order granting his Renewed and Supplemental Motion Under Seal for an Order to **Take Possession of Debtor Property,** not Non-Debtors. The Order was specifically limited to the Debtor and the Debtor's estate. That did not include any of the named Appellants! In order to get the break order under seal, the Trustee obtained an untruthful Affidavit saying the Debtor was hiding gold Rolex watches in the house, which in reality were silver Bertlings-looking replicas with very little value instead. I was shocked at how poorly the watches were thrown on the bottom of the box, the Trustee didn't know if they were real or not, yet no precaution was taken to preserve the value in case they were real.

The Trustee and his counsel were/are paid by Juravins adversaries: DCS entities, Bella Collina HOA, and the Club at Bella Collina, all entities have the same owner that controls the community where I live with my family.

Why did the Trustee not designate an independent and neutral party to execute the break order and prepare a real inventory, not the pathetic list filed on May 6, 2021.

On the morning of May 5, 2022, at 10 am, five (5) armed US Marshals with the Trustee Chapter 7 Kennedy, Mr. Saxton, Mr. James Ryan, and Ms. Reynolds arrived at my home in Bella Collina community, FL, and, over the course

of over 4 hours, executed a search warrant and seized documents and electronic devices. The emotional impact on my family has been one of horror and immense fear, which we were forced to experience and left to live with for the rest of our lives. I remember clearly, it was Wednesday morning when I heard pounding on the door, and suddenly I spotted a heavily armed man wearing a gym-like T-shirt lurking through my living room window. I was scared to death to open the door or move inside my own home, especially when my daughters are terrified and crying. The US Marshals entered the house through the back door.

My daughters and I were commanded to stay in one place in the house and instructed to ask permission from US Marshals if, for example, my daughters or I needed to use the bathroom or prepare a sandwich in the kitchen. I heard, "you can't be disturbing their search," one of the US Marshals said. I was scared to argue, they were armed and in control, with no one on my side present to overlook what going on during the break order.

My crying daughters, 11 and 13 years old, and myself were seated at the round breakfast table being watched by two (2) US Marshals while the other three (3) US Marshalls were roaming in the house. Trustees, Mr. Saxton, Mr. James Ryan, and Ms. Reynolds knew exactly where to go and what to do. They reviewed documents, page by page, and created piles. At this stage Trustee, Mr. Saxton, Mr. James Ryan, and Ms. Reynolds knew what they are about to confiscate, it was

simply premeditated. They are Florida licensed attorneys, they knew what they have been doing,

The Trustee and his representatives were at my home for over (4) four hours, from 10 am to 2:25 pm, with a cumulative workforce equivalent to 17 man hours, and left nothing undisturbed. In that regard, they had more than adequate time to determine what property was Property of the Estate, and what property was not Property of the Estate.

Counsels Ms. Reynolds and Mr. Saxton spent a significant amount of time in my bedroom and my closet going through my personal drawers, and my husband's closet. I remember Mr. Saxton was going out of the house 3-4 times to make some calls, I overheard that he was getting guidance directing him where to go in the house, and coming back to keep searching the master bedroom, bathroom, and closets.

The counsels brought in carton boxes, placed them on the floor in front of the door, and started throwing Debtor's and Non-Debtor belongings inside. Counsel James Ryan was quickly moving electronic devices to his car, parked right in front of the front door.

I was not allowed to review the items taken from my house.

I had to ask one of the US Marshalls permission to at least let me take quick photos. The US Marshall said he needed to speak first with the counsels and left

the house to talk outside while the other US Marshall continued watching my daughters and me. US Marshall came back and said I could quickly photograph the boxes with the thrown content inside. One of the consuls, Mr. Saxton or Mr. James Ryan, said, "watch her so she would not take anything from the pile", I think it was Mr. James Ryan. After getting permission, I rushed to take photos of the boxes filled with Debtor's and Non-Debtors' documents. I got permission to step outside the house to capture the electronic devices loaded in Mr. James Ryan's personal car. I noticed in the boxes the medical records of my family, cats, life insurances, POA, my bank account statements, school documents, kids' photos and asked why these were being taken? …I heard, "it is part of the break order; we need that." I learned later that was wrong.

Non-Debtor corporate records, and minutes clearly identified as such were confiscated. Documents concerning ongoing litigation between myself and the Bella Collina Homeowners were confiscated and, in fact, were later used by Mr. James Ryan, counsel for the Trustee, Bella Collina, and DCS, at my continuing Rule 2004 Examination and presented as an Exhibit for questioning about the ongoing lawsuit with Bella Collina HOA. It was my Attorney-client privilege document, and it was taken from the scanner at my home on May 5th, 2021.

A list of Property of Appellants, Non-Detors, not a part of the Estate Property remains the subject of issues in this appeal.

On the break order day, the Trustee and his 3 attorneys removed documents from the house, including Non-Debtors. It is important to note that an inspection of the returned inventory to the Debtor's counsel office, performed by an independent party, a Private Investigator, confirmed that Trustee Kennedy and his counsels confiscated Non-Debtors property:

- Medical records,

- Anna's life insurances information,

- Copies of passports of Anna's relatives,

- Anna's personal banks' statements,

- POA for kids if parents were to die,

- Health insurance

- Personal purchases,

- Copy of Anna's social security number,

- Children's school information,

- Children's photos,

- Anna's tax financial information Vernan and Vernan,

- BOA bank children's information,

- Anna's banks' transactions,

- Children's authorization to travel,

- Children pets' medical records,

- Anna's copies of passport,

- Children's copies of passport,

- Timesheet for housekeeper,

- Vehicle insurance information,

- Vehicle insurance cards,

- Cigna health insurance ID cards,

- Blood work results,

- List of medications,

- Family dental information,

- Anna's medical ref abortion,

- Cheques,

- Children's and Anna's medical bills,

- Lab work,

- Anna's personal information from Dublin in Ireland from 2007,

- Anna Polish birth certificate,

- Children's school photos,

- Child medical speech therapy information,

- Aetna health information,

- Cigna health information,

- Children's braces located in Anna's personal bag,

- Anna's personal purse,

- Car camera located in Anna's purse,

-  School information,

- Children care authorization,

- Letters and statements,

- Marriage certificate,

- Anna's tax returns,

- Anna's client-attorney privileged documents, etc.

This evidence did not have a chance to be presented in court because of a lack of evidentiary hearing and quick denial by the Bankruptcy Court and dismissal of the case in Federal Court.

The Break Order was specifically limited to the Debtor and the Debtor's estate. That did not include any of the named Appellants!

Appellees here and there say this, they found nothing in retrospect. In this instance, they exceeded their clear and delineated authority. They went beyond the bounds of all decency. The confiscation of my personal female medical records referring to the abortion I had is not only an invasion of privacy, is not only an act of deprivation and utter deceit, but is heinous in its design and implementation. Their acts were draconian. The extent and degree to which the Trustee, Mr. Saxton, Mr. James Ryan, and Ms. Reynolds took liberty is nothing short of shocking. The

intimate and personal documents that they took can only evidence a blatant disregard and disrespect for the authority and obligations placed on them by the court but more evidence of an intentional intrusion of privacy intended to demoralize and humiliate my family.

The order clearly said "a professional photographer" should be taking the photos", instead, Mr. Saxton filmed my house using his personal cell phone and then shared the data captured during the break order with third parties.

The Order clearly limited the access to the Debtor or his estate, not to the property of Anna Juravin or Juravin's daughters.

The Trustee called his list inventory. It was not an inventory acceptable under any accounting or court standard. There was no inventory. Writing a box or a carton is not an inventory.

Why Non-Debtors' belongings were not identified in the Trustee's List of Inventory?

Federal Discovery most often uses a stamping system, where every document is identified and labeled. Even the most cursory examination would have afforded time to separate permissible Debtor items from Non-Debtor items, with the immediate return of Non-Debtor items. It did not happen in this case.

This Inventory was filed on May 6, 2021. Five months later, the Trustee had yet to acknowledge, account for, or return the Non-Debtors Property, which has

absolutely nothing to do with the Debtor's Estate. There is no reason or justification for the Trustee's continued retention of Non-Debtor property other than for spite and retribution by DCS, who for all intents and purposes, appears to control the apron strings of the Trustee, Mr. James Ryan, Mr. Saxton, and Ms. Reynolds.

Appellees stated in their Brief that "*Prior to the Trustee's removal of documents from the Premises, Mrs. Juravin was permitted to review many of those documents and retain those she contended were personal or confidential in nature*". This is a bald-faced lie, an utter lie. Utter lie. I was not permitted to review or retain anything. This is a misstatement intended to mislead this Court. Together with my daughters, which are big enough to speak the truth, were seated by the breakfast table, and armed US Marshals were watching us at all times. I had to ask permission from US Marshal in order to use the bathroom and take photos when I noticed the inventory being carried outside my home.

There was never an evidentiary hearing to substantiate this point, and many issues in this claim. This is a complete and utter lie and the Trustee together with Mr. Saxton, Mr. James Ryan, and Ms. Reynolds should be sanctioned for making such misrepresentations to the Court.

### D. The Motion to Remove Trustee.

One claim is a claim for removal, exposing relationships between the Trustee and his appointed counsels: Mr. Saxton, Mr. James Ryan, and Ms. Reynolds a complete lack of respect for the concept of independence, but more, speaks of the breach of a fiduciary relationship that is ordinarily to be time-honored for a bankruptcy debtor.

The within case is a damage claim by Non-Debtors, the Debtor is not part of this appeal.

Again, this is a bald-faced lie!  There never was an evidentiary hearing. This is a unilateral unsupported statement. In point of fact, there is a letter from my former Attorney Mr. Portner to Attorney James Ryan that gave an evasive answer.

Further, the Debtor made multiple demands through his attorney and no evidentiary hearing was ever held to establish this fact. Further, conversion in Florida does not require a demand for the return of goods unlawfully converted. In fact, demand for return was made before filing the claim. Hereto, Appellees attempt to subvert this existing case law.

Further, how could you tell what was returned when no proper inventory was ever made in this first instance!?

The Appellees say that Debtor's counsel Mr. Bartolone confirmed that all items were returned. Where and when did Debtor's counsel, Mr. Batrolone, say all items were returned? Did he really say that???

-15-

The debtor's counsel, Mr. Bartolone, was not present at the break order into my home and can not know what was taken, secondly,  Mr. Bartolone did not check the returned inventory which was dropped off at his office. A private investigator inspected the returned inventory in about less than 4 hours, to compare to the Trustee's inspection time from the day of break order: 4 people times  4,5 hours equals about 17 man hours in total.

This case has nothing to do with the Debtor or administration of the Debtor's Estate. It is a big lie on the Appellees' part.

Appellees mentioned an entity called Code2God which is not Non-Debtors'. Again, illegal conversion of goods does not require demand for return under Florida case law! This case has nothing to do with the Debtor or administration of the Debtor's Estate.

Appellees admit no evidentiary hearing was ever held. Therefore all they say is argumentative and not a finding of fact!

Highly prejudicial and inflammatory statement has absolutely nothing to do with the merits of this case.

### E. The Complaint.

Not as stated. We wanted to exclude documents of Non-Debtor obtained illegally in violation of the 4th Amendment.

-16-

There was clearly applicable the Ultra Vires exception to the Barton Doctrine therefore not requiring permission from the bankruptcy court to file an appeal.

There never was an evidentiary hearing to substantiate any facts in this case.

The error of the court stems from the void in the record of an evidentiary hearing.

## V.    SUMMARY OF THE ARGUMENT.

Case law does not allow bankruptcy law to pierce through to Non-Debtors. This is substantive law being violated herein by the Courts.

Wrong. All wrong. We attempt to exclude evidence obtained concerning Anna Juravin a Non-Debtor and not involved in any litigation at the time of the Break Order. Again this is a bald-faced lie by the Appellees.

The Break Order was limited to the Debtor's goods, not my birth records and medical records.

Here, Appellees say they were acting in their official capacities, elsewhere in this brief, they say the attorneys are not acting in their official capacities. They can't have it both ways.

Wrong. It was the conversion of illegally obtained goods and documents, clearly on their face having absolutely nothing to do with the Debtor or the Debtor's estate. The Trustee did not have the right to take the Non-Debtors property.

Appellees say: "*Even if the Barton doctrine and judicial immunity do not apply, the appeal is merely an improper collateral attack on the constitutionality of the Break Order.*"

Not so. This is an absurd statement. The Break Order did not order or allow a search and seizure of Non-Debtor property under any circumstances.

## VI.   ARGUMENT.

**A.**  Appellees say that:

   i.  *"This case falls squarely within the contours of the Barton doctrine".*

No, it follows the exception to the Barton Doctrine. The Appellees acted outside the scope of their authority!

This is not a garden variety Barton Case. It is a case of absolute abuse of any discretion by the Trustee and his counsels.

We dispute the Break Order had any efficacy as to the Non-Debtor rights under the Fourth Amendment. There was an unreasonable search and seizure.

Appellees say that " *Appellants seek to prevent the Trustee from relying on documents obtained pursuant to the Break Order".*    Hereto a lie. We don't agree with such statements, they are not true. Trustee obtained everything from the Non-Debtors and Debtor's home, including medical and other personal documents in form of hard copies, and electronic data not just from confiscated electronic

devices but also from a cloud server. The Trustee and his counsels had ample time to copy relevant documents. The Trustee stripped the Non-Debtors of dignity without any scruples.

    ii.  Here Appellees say: "*Barton applies because this lawsuit is "related to" the Debtors' Bankruptcy Cases under 28 U.S.C. § 157(a)."*

Hereto, a total misrepresentation of the facts. This case has nothing to do with the Debtor whatsoever. It is a bold lie on their part. This is about Non-Debtors having absolutely nothing to do with the Debtor's care or the administration of the Debtor case. That is a fiction created by the Trustee.... it is simply not so.

The jurisdiction does not take precedence over a Fourth Amendment right to unreasonable search and seizure which took place on May 5, 2021!

Mrs. Juravin's birth records and hospital abortion records have nothing, absolutely nothing to do with the Debtor or his estate. A bold and calculated lie by Appellants.

*"This rule of exclusive jurisdiction is one of 'necessity' because multiple courts attempting to control the same property at the same time 'would result in unseemly conflict."* The quote is misplaced. The 4th Amendment takes precedents in this case.

Again a bold face lie, utter lie, We vigorously dispute that the claims are in any way connected to the Debtor's Bankruptcy case. These are unadulterated and inexcusable lies and perversion of the truth!

*"The Complaint was filed nonetheless, and Mr. Juravin, through the guise of his wife and children,..."* Another lie, lie after lie, aberration of the truth. Appellants stand up for their rights, the issue here is the Appellants' property.

I don't understand why the Appellees are concerned that: *"Allowing the lawsuit to proceed and granting any of the relief requested, would certainly have an impact on the Trustee's investigation, handling, and administration of the Bankruptcy Cases."* Appellees should not be afraid to proceed with the claim if everything they did was done properly and in a good faith.

**B.** *"The District Court appropriately considered the limited exceptions to the Barton doctrine and did not err by concluding the ultra vires exception is inapplicable",* Appellees say.

The Court did little to consider the exceptions and whitewashed the entire appeal. The Court made bold conclusions without any evidentiary hearing ever held.

The District Court made no analysis of the case law, except to say what it did in a conclusory fashion. It made no effort to judicially clarify how the prior rulings of the court would apply to this case other than its bare and conclusory opinion.

**C.** *"The District Court did not err in finding that the ultra vires exception*

*to the Barton doctrine is inapplicable"* according to Appellees.

The Court made committed manifest error. The ultra vires exception clearly applies and case law supports the Appellant, not the Appellee. The case law cited by Appellee is inopposite and not on point.

The bankruptcy court never, never, never gave approval to steal and convert the nontrustees' birth records and medical records.

Another misstatement of the law. Unlawful conversion by a Trustee does not require a demand to return. There was never an evidentiary hearing on this issue. There was no discretion to seize Non-Debtors goods or to hold unaccounted for (5) five months!! Five (5) months is plenty of time to copy relevant documents, if not all. Why did the Trustee hold onto the Non-Debtors documents and made the return just when the claim issue arose?

**D.** *"Even if the Barton doctrine is somehow inapplicable, the Order should point*

*be affirmed because the Appellees have judicial immunity for acts*

*taken within the scope of their official capacity",* Appellees say.

The whole purpose of the Ultra Vires exception is that they do not have immunity to acts totally outside the scope of their authority.

**E.** *"This appeal is an impermissible collateral attack on the Break Order"* according to Appellees.

The Break Order only applied to the Debtor and the administration of the Debtors' Estate. Appellees are trying to assert that the Break Order exonerates ultra vires activities against Non-Debtors.

**F.** *"Even if the Barton doctrine and judicial immunity do not apply, the District Court did not err by dismissing the claims because they suffer from certain fatal deficiencies,"* Appellees say.

The law is clear, they are perverting the law, not us.

i. Appellees: *"Counts II and III were properly dismissed with prejudice because they are barred by Florida's litigation privilege".*

There was no litigation privilege because there was no pending litigation by the Trustee. Hereto, a gross perversion of the application of law.

ii. Appellees: *"Count I was properly dismissed with prejudice because Appellants cannot allege a claim under 42 U.S.C. § 1983 or Bivens".*

The facts squarely fit the Bivens case, contrary to the unsubstantiated assertions by Appellees.

iii. Appellees: *"Count I and Count II were properly dismissed with prejudice because the Trustee and Counsel are not law enforcement officials*

-22-

*subject to the Fourth Amendment or the Florida Constitution".*

The case law Appellant cited holds that the Trustee is an officer of the law and is bound under the 4th Amendment. Counsel in this instance acted under the color of law because they actively participated with the US Marshall in undertaking the search and seizure of protected property, Non-Debtors' property. They were acted participants in the search, not just acting as agents for the Trustee on paper. They walked out with Appellants' goods in their hands and put them into their own vehicles.

This is not a garden variety Barton Case. It is a case of absolute abuse of any discretion by the Trustee and his counsels. Appellants dispute the Break Order had any efficacy as to the Non-Debtor rights under the Fourth Amendment. There was an unreasonable search and seizure.

Appellees say: "*claims are "related to" the Debtors' ongoing bankruptcy cases and could impact their outcomes.* " Hereto a lie. We don't agree with such statements, they are not true.

The Order was specific as to its terms and in Paragraph 3 itemized the Property of the Debtor's Estate which were to be retrieved. Specifically, the "Property" allowed to be retrieved was:

    a.    All business records (including passwords for electronically stored information) belonging to the ROCA Labs Entities and the Sold Entities,

including without limitation ROCA Labs, Inc. ROCA Labs Nutraceutical USA, Inc. Juravin Inc.

b.  All electronic communications devices on the Premises containing information about the Debtor, the Debtor's business interests, or property of the bankruptcy estate.

c.  Debtor's wristwatch collection.

d.  Any additional items Trustee, in his sole discretion, reasonably believes to be part of the bankruptcy estate.

Why Appellants' property was confiscated?

The Trustees' Affidavit from day 5 of November 2021, entered into the docket of case 6:18-bk-06821-LVV, Ref point 27 says:

> "I do not recall seeing anything that was of a very sensitive or personal nature. I do not recall seeing any intimate pictures, or even any pictures, whatsoever. I do not recall seeing any personal bank information from a Polish bank in the name of Anna Juravin. I do not recall seeing any personal documents from Poland from before the Debtor and Mrs. Juravin were married. I do not recall seeing any passports. I do not recall seeing any blank checks. I do not recall any life insurance information. I do not recall seeing any durable  POA documents".

The majority of the items listed above and claimed by the Trustee as not seen, in fact, were part of the returned inventory to the Debtor's counsel's office by the Trustee's counsel. (emphasized added)

On November 15, 2021, a Private Investigator spent about 4 hrs reviewing returned inventory and determining each document, in comparison to Trustees' team allocated time of almost 17 hrs to inspect the inventory seized during the break order, on May 5, 2021.

Trustee failed to itemize properly inventory and suggest that Non-debtor belongings taken from the home were and are not necessarily Appellants', Appellee's words:

*" claims relate to the Trustee's and Counsel's alleged actions with respect to property allegedly belonging to Mrs. Juravin, rather than property of the Debtors"*

When did Appellees conclude that? Was it during the break order while reviewing documents at my home or later in their offices? I am very concerned about the exposure of my family's personal data. In fact, my cheks taken during the break order were used later to withdraw money from my account.

Appellees continue:

*"Regardless of whether the Debtors or Mrs. Juravin and her children bring these claims, the Barton doctrine applies because this lawsuit falls squarely within the Bankruptcy Court's "related to" jurisdiction under 28 U.S.C. § 157(a)."*

The jurisdiction does not take precedence over a Fourth Amendment right to unreasonable search and seizure!

Non-Debtor birth records and medical records have nothing, absolutely nothing to do with the Debtor or his Estate. A bold and calculated lie by Appellees.

> "*This rule of exclusive jurisdiction is one of 'necessity' because multiple courts attempting to control the same property at the same time 'would result in unseemly conflict.'*"

The quote is misplaced. The 4th Amendment takes precedents in this case.

Again a bald-faced lie, an utter lie, we vigorously dispute that the claims

are in any way connected to the Debtor's Bankruptcy case. These are unadulterated and unexcusable lies and perversion of the truth!

Appellees cite:

*"This Court's Tufts v. Hays decision does not compel a different result. 977 F.3d 1204 (11th Cir. 2020). In that case, one law firm sued another law firm for certain misrepresentations made from one to the other in connection with their mutual client's bankruptcy case. Id. at 1207. This Court reversed the dismissal of the claims based on the Barton doctrine. Id. at 1206-07. In that case, though, the parties agreed that the outcome of the lawsuit could have no impact on the bankruptcy case, which had already been closed. Id. at 1209."*

Not factually compatible with our case.

The District Court made no analysis of the case law, except to say what it did in a conclusory fashion. It made no effort to judicially clarify how the prior rulings of the court would apply to this case other than its bare and conclusory opinion.

The Bankruptcy Court never, never, ever gave approval to steal and convert the non-trustee's birth records and medical records.

Unlawful conversion by a Trustee does not require a demand to return. There was never an evidentiary hearing on this issue.

Appellees continue:

*"Mr. Juravin's counsel confirmed; he never asked the Bankruptcy Court to order the further turnover of documents or to order further turnover of any items allegedly belonging to Mrs. Juravin,..."*

These are bold statements likely not true.

Appellees say that:

*"State-law claims stemming from actions taken to assist a bankruptcy trustee in administering an estate have also been dismissed on the basis of Florida's litigation privilege."*

There simply was no litigation privilege because there was no pending litigation by the Trustee. Hereto, a gross perversion of the application of the law.

We cite case law clearly to the contrary.

## VII. CERTIFICATE OF COMPLIANCE WITH  RULE 11th Cir. R. 28-1(m)

This brief complies with the 11th Cir. R. 28-1(m) because excluding the parts of

the document exempted by FRAP 32(f) and this brief contains 5424 words. The

document contains 6340 words in total.

This document complies with the typeface requirements of FRAP 32(a)(5) and the

type-style requirements of FRAP 32(a)(6).

SIGNATURE:

_____

   Anna Juravin, individually and as Guardian of minor
Appellants

Dated: January 3, 2023

# CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2023, a true and correct copy of the foregoing has been furnished via U.S. Mail to:

 Bradley M. Saxton
(407) 246-8672
329 Park Avenue, North
Winter Park, FL 32789

Lauren M. Reynolds
(407) 246-6566
329 Park Avenue, North
Winter Park, FL 32789

James D. Ryan
636 US Highway One
Suite 110
North Palm Beach, FL 33408
(561) 881-4447

Scott A. Beatty
c/o Dennis Kennedy
1715 Monroe Street
P.O. Box 280
Fort Myers, FL 33902

Anna Juravin */Pro Se/*